JACOB GEORGE SEIKEN, PETITIONER-RESPONDENT, v. TODD DRY DOCK, INC., RESPONDENT-APPELLANT.

Argued June 6, 1949—Decided June 30, 1949.

470

*Mr. Walter H. Jones (Mr. John J. Sullivan, Jr.,* on the brief) argued the cause for the appellant.

*Mr. Thomas J. Brogan (Mr. Joseph Butt,* attorney; *Messrs. Brogan, Hague & Malone,* of counsel) argued the cause for the respondent.

The opinion of the court was delivered by

ACKERSON, J. This is a workmen's compensation case. The plaintiff, Jacob George Seiken, filed a claim petition for an alleged injury sustained during his employment with defendant, Todd Dry Dock, Inc. The Workmen's Compensation Bureau dismissed the claim but the Hudson County Court of Common Pleas reversed and awarded petitioner temporary and permanent total disability compensation plus counsel fees.

From this judgment, *certiorari* to the former Supreme Court was granted on the appellant's application. On September 15, 1948, the cause was automatically transferred to the Appellate Division of the Superior Court, pursuant to the requirements of the new constitution, and has been certified by the new Supreme Court on its own motion as part

of a program of clearing the Appellate dockets before the summer recess, and will be disposed of here as, though argued in the Appellate Division.

The meritorious question at issue is whether the petitioner, Jacob George Seiken (known to his fellow workers as George), suffered a compensable injury of traumatic origin by virtue of an "accident arising out of and in the course of his employment" in defendant's shipyard on November 25, 1944. If so the other issues to be considered are whether the employer, Todd Dry Dock, Inc., received timely notice or knowledge thereof as required by law; whether or not permanent disability resulted therefrom, and if it did, the nature and extent of same; and lastly whether the lower court's allowance of counsel fees was excessive.

The factual background may be summarized as follows:

Petitioner, sometimes hereinafter referred to as George, was first employed as a laborer in appellant's shipyard located in Hoboken, in March of 1943 at the age of 34. In this capacity, he did heavy maintenance work in and about the yard and piers keeping them clear of scrap iron and other debris which came from the ships, and unloading keel blocks, pipe, carbide, etc., from freight cars and the like, so that trucks could go down to unload and reload the ships. A few months later, he was made a temporary "snapper" (foreman), and placed in charge of a gang of from six to eight men doing this type of heavy labor in the course of which he was required to work along with them.

The yard itself was divided into two sections. The new yard in the north end was in charge of a permanent snapper named Tony Scarnechia; and the old yard in the south portion in charge of Fred Zahn, also a snapper. Over them in a supervisory capacity was one John F. McGlew. Petitioner normally worked in the north end under Scarnechia, although occasionally he would work in the south yard when assigned there by McGlew.

On the day of the alleged accident, November 25, 1944, petitioner testified that he started his regular work at 7 A. M. with a crew of six men. With two of the men he went on

Pier D, in the south yard under the supervision of Fred Zahn, to remove some scrap iron and other debris that had accumulated there. This work was routine in character and expected of him in the usual performance of his duties. When asked to relate what happened he said that around 9:30 or 10 o'clock that morning he and a co-worker on Pier D were lifting a piece of scrap metal weighing between two hundred and two hundred and fifty pounds on to a baggage truck, and just as he was lifting it petitioner suffered a pain across his heart and in the chest area accompanied by shortness of breath. He said that he then walked to the snapper's locker room, assisted by one of the men in his gang, and there rested his head on a table and collapsed. That a few moments later, Tony Scarnechia came in and seeing petitioner's condition summoned aid from the plant dispensary. A nurse responded and administered first aid after which George was taken to the dispensary where he had another attack and the plant physician was called in and found that the petitioner had a severe pain in his chest but his heart sounds were good and regular and he was sent home and advised to see his family doctor.

Thereafter he sought medical aid and hospitalization of his own volition and admitted that he had not asked defendant to supply or pay for medical assistance. The family doctor diagnosed his condition, on November 25, 1944, as coronary thrombosis.

The petitioner did not inform either the plant nurse or doctor of the lifting incident of which he now complains, and at the hearing he did not produce any of the men with whom he was working or the man who he said helped him into the locker room, to corroborate any such lifting episode.

Since the date in question the petitioner has done practically no work, has had other heart attacks, and has been on several occasions hospitalized. At the hearing the medical testimony was in conflict respecting the causal relationship of the alleged lifting incident to the petitioner's coronary condition.

Defendant first challenges the judgment of the former Court of Common Pleas on the ground that the proofs were

insufficient to establish that the iron lifting incident ever occurred, and, therefore, there was no accident within the meaning of the Workmen's Compensation Act. While the factual basis for this incident seems to rest entirely upon the uncorroborated word of the petitioner, we do not feel called upon to weigh the evidence with respect thereto, for assuming that the incident did occur, we find no basis in the evidence for the further finding that petitioner's injury was "an accident arising out of" his employment within the purview of the Compensation Act.

The petitioner testified that the lifting of the iron bar by himself and a member of his gang was a matter of routine connected with his regular work of keeping the piers and yard clear of debris that accumulated thereon from the ships and other sources; that iron material of this weight and character was customarily handled by two or three men lifting it on to a baggage truck for removal elsewhere as was done on this occasion, and that he was used to it and was required to lift heavy material in the course of his employment.

The position taken by the petitioner in his brief seems to favor the proposition that there need not be any evidence of unusual strain or exertion in a "heart case" in order to establish a compensable accident within the meaning of the act, so long as the injury was sustained while the claimant was engaged in the performance of his work, and apparently this was the *ratio decidendi* of the judgment below.

█ The statutory prerequisites to establish a compensable injury by accident under *R. S.* 34:15-7 are: that the alleged accident arose (1) in the course of employment, and (2) out of the employment. The fact that injury was suffered during the course of work does not *per se* entitle one to the benefits of that act. It must also appear that it arose out of the employment. *Brighton v. Rumson,* 135 *N. J. L.* 81, 84 (*Sup. Ct.* 1946); *Bouvier v. County Gas Co.,* 134 *Id.* 89 (*Sup. Ct.* 1946).

█ █ It is well settled that a claimant must establish the foregoing elements of his claim by a preponderance of the evidence. *Parker v. John A. Roebling's Sons Co.,* 135 *N. J.*

L. 440 (*Sup. Ct.* 1947). There is a presumption that injury or death from heart disease is the result of natural physiological causes, the *onus* is upon the petitioner to prove by a preponderance of the probabilities that the employment was a contributing factor to the injury without which the accident would not have occurred. *Ames v. Sheffield Farms Co.*, 137 *N. J. L.* 336; affirmed, 1 *N. J.* 11 (1948); *Lohndorf v. Peper Bros. Paint Co.*, 134 *N. J. L.* 156, 159 (*Sup. Ct.* 1946); affirmed in 135 *Id.* 352 (*E. & A.* 1946); *Grassgreen v. Ridgeley Sportswear Mfg. Co.*, 2 *N. J. Super.* 62, 64 *A.* 2d 616 (*App. Div.* 1949); *Joseph Dixon Crucible Co. v. Law*, 135 *N. J. L.* 528 (*Sup. Ct.* 1947).

In *Lohndorf v. Peper Bros. Paint Co., supra,* the court stated the rule of law, which we have since adhered to, as follows: "The law places the burden of proof on petitioner for compensation; and it is not sustained unless the evidence preponderates in favor of the tendered hypothesis. That must be a rational inference, *i. e.,* based upon a preponderance of probabilities according to the common experience of mankind."

The proposition advanced by petitioner was recently reviewed in the case of *Grassgreen v. Ridgeley Sportswear Mfg. Co., supra,* wherein it was held that in order to rebut the presumption that a heart ailment is due to natural causes, it is incumbent upon the claimant to produce evidence of an unusual strain or exertion beyond the mere employment itself to constitute an "accident" within the meaning of the workmen's compensation law. In the *Lohndorf case, supra,* the court distinguished "accident" from "employment" and said "to render an injury compensable there must be an event or happening beyond the mere employment itself, which brings about the final result or contributes thereto, and without which the injury or death would not have resulted. * * * To hold otherwise is to constitute an employer an insurer of the health and life of his employees." The court there defined "accident" as an "unlooked for mishap or untoward event which is not expected or designed." See, also, *Gaudette v. Miller*, 1 *N. J. Super.* 145, 62 *A.* 2d 749 (*App. Div.* 1948);

*Irons v. New Jersey Department of Institutions and Agencies,* 3 *N. J. Super.* 216, 66 *A.* 2d 44, 46 (*App. Div.* 1949).

 A review of the cases decided since the *Lohndorf case, supra,* shows a general adherence to the view therein expressed that something of an unusual strain or exertion beyond the mere employment itself is required to establish liability; the mere showing that the claimant was performing his routine, everyday tasks, when he suffered a heart attack does not establish a right to workmen's compensation. In *Grassgreen v. Ridgeley Sportswear Mfg. Co.; supra,* the proposition that petitioner herein advances was rejected. In that case the employee was engaged as a shipping clerk in a garment concern whose duty it was to sort bundles of cloth weighing from 50 to 150 pounds each; the seizure occurred when lifting the fifth bundle on to a sorting table. ˈThe court held that the employee was performing his routine work at the time and there was no evidence of an unusual strain or exertion. In *Ames v. Sheffield Farms Co., supra,* the defendant's milk driver was stricken with a fatal heart attack as he was negotiating a difficult turn with his milk truck along his usual route, the court held there was no unusual effort or strain to constitute an accident; this court affirmed on the authority of the *Lohndorf case, supra.* In *Temple v. Storch Trucking Co.,* 2 *N. J. Super.* 146, 65 *A.* 2d 70, 72 (*App. Div.* 1949), the decedent, a truck driver in the employ of the defendant, died shortly after he had performed labors connected with his employment, including cranking up pony wheels after he and his fellow workers had hitched the tractor to the trailer, all of which was rendered difficult by the prevailing cold weather. The court said that even conceding that on that day, the rolling up of pony wheels was hard labor, it was nevertheless a usual and not unexpected task in his employment and therefore noncompensable because there was no event or happening beyond the mere employment itself. *Cf. Lagerveld v. Nathan Doblin Corp.,* 137 *N. J. L.* 335 (*Sup. Ct.* 1948); *Gaudette v. Miller, supra; Irons v. New Jersey Department of Institutions and Agencies, supra; Moleski v. Bohen,* 1 *N. J. Super.* 136, 62 *A.* 2d 745 (*App. Div.* 1948);

*Joseph Dixon Crucible Co. v. Law, supra.* As was aptly said in the case last cited, at *p.* 531: "It is requisite that in workmen's compensation cases grounding in alleged heart injuries the evidence be carefully scrutinized and assayed lest disability consequent upon disease alone constitute the basis of an award of compensation."

■ Applying the rule for determining compensability laid down in the foregoing cases to the record before us, we conclude that the petitioner has failed to meet the test of showing that his heart attack was caused by an unusual strain or exertion (accident) "arising out of" his employment, and beyond the mere employment itself.

As already related herein, the particular work in which the petitioner was engaged at the time in question was the usual routine course of labor to which he was accustomed, thereby negating any reasonable inference of an unusual or unexpected strain or exertion arising out of the employment within the meaning of the controlling statute.

■ ■ This conclusion renders it unnecessary to consider the other grounds urged for reversal. And for the same reason we are not concerned with the amount of the counsel fees awarded below. The right thereto is purely statutory; *Stetser v. American Stores Co.,* 125 *N. J. L.* 275 (*E. & A.* 1940); *Comparri v. James Readding, Inc.,* 121 *Id.* 591, 592 (*Sup. Ct.* 1939). The statute, *R. S.* 34:15–67, as amended, *P. L.* 1945, *c.* 97, *p.* 438, § 1, provides for the allowance of attorneys fees to the "party prevailing" which has been construed to mean "the party ultimately prevailing when the matter is set at rest." The matter is now at rest and the petitioner is not the prevailing party. *D. Kaltman & Co., Inc., v. Itzkowitz,* 133 *N. J. L.* 191, 194 (*Sup. Ct.* 1945).

The judgment of the former Hudson County Court of Common Pleas is reversed, and this results in the re-instatement of the judgment of the Compensation Bureau.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, BURLING and ACKERSON—5.

*For affirmance*—Justice HEHER—1.