6 N.J. Super. 320 (1950)
71 A.2d 226
EULA V. FRANKLIN, WIDOW OF WILLIAM THOMAS FRANKLIN, DECEASED, PETITIONER-RESPONDENT,
v.
U.S. BRONZE POWDER WORKS, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 1950.
Decided February 8, 1950.
*321 Before Judges JACOBS, DONGES and BIGELOW.
Messrs. Hein & Smith, attorneys for and of counsel with petitioner-respondent (Mr. Seymour A. Smith on the brief).
Mr. Frank Fink argued the cause for respondent-appellant (Mr. James J. Carroll, attorney).
The opinion of the court was delivered by DONGES, J.A.D.
This is an appeal from the decision of the Bergen County Court, which reversed the decision of the Workmen's Compensation Bureau, dismissing plaintiff's petition.
Petitioner is the widow of William Thomas Franklin, deceased. It appears that Franklin, as a laborer, had worked for the respondent for six or more years prior to January 12, 1942. It appears that Franklin had always been in good health and seldom absented himself from work. However, in December of 1941, he had an X-ray examination at the Englewood Hospital. This disclosed to Dr. Seymour, his family physician, that there was a hypertension present with a greatly enlarged heart.
Franklin's regular work consisted of extracting from a heating unit a crucible of metal weighing approximately 130 pounds with the aid of a pulley device. His working hours were from 7 A.M. to 3 P.M. each day.
*322 Occasionally, once or twice a month, or, sometimes, once in six weeks, additional overtime duties were required of the decedent and his fellow workers. This consisted of unloading zinc or metal ingots from a freight car. On the day in question, January 12, 1942, the decedent worked his usual hours from 7 A.M. to 3 P.M. This was also one of the days when the occasional unloading of the freight cars was to take place. This work began about 5 P.M. Each ingot weighed up to 40 pounds. The ingots were passed from man to man until they reached their destination. They were passed at the rate of approximately one every half minute. After doing this type of work for about two hours, decedent began perspiring excessively and in response to inquiry, remarked that he wasn't feeling well. His wife was summoned and when she arrived, she found her husband slumped in an automobile where he had been placed. He was gasping for breath and was almost speechless. He was taken home and Dr. Seymour was called. The doctor administered large doses of digitalis to check his heart failure.
The decedent remained in bed for a considerable length of time and was never able to return to work. He died on July 14, 1943.
Dr. Seymour, the family physician, and Dr. Samuel B. Reich, a specialist in diseases of the heart, both testified that they are of the opinion that over-exertion which occurred on January 12, 1942, resulted in sudden failure of the heart and that this condition was the cause of death. Both of these witnesses had examined the decedent. Dr. Jerome Kaufman, who specialized in internal medicine with special reference to cardio-vascular diseases, testified on behalf of the respondent. He stated, in answer to a hypothetical question, that he believed that decedent was suffering from hypertensive cardio-vascular disease with an enlarged heart, prior January 12, 1942. He said that it is clear that decedent's heart failure resulted from his hypertension and was not caused by his work.
The deputy commissioner dismissed the petition, and the Bergen County Court, on appeal, reversed this determination.
*323 There may be a compensable injury where there is an accidental strain of the heart, even though the heart was previously weakened by disease, if the accident arose out of and in the course of the employment. Grassgreen v. Ridgeley Sportswear Mfg. Co., 2 N.J. Super. 62 (App. Div. 1949); Swift & Co. v. Von Volkum, 131 N.J.L. 83 (Sup. Ct. 1943).
There is, of course, a presumption that injury or death from a heart disease is the result of natural physiological causes. It has been held in recent cases that in order to rebut this presumption there must be evidence of an unusual strain or exertion. There must be an event or happening, beyond the mere employment itself. Lohndorf v. Peper Bros. Paint Co., 134 N.J.L. 156 (Sup. Ct. 1946); affirmed, 135 Id. 352 (E. & A. 1947); Grassgreen v. Ridgeley Sportswear Mfg. Co., supra; Seiken v. Todd Dry Dock, Inc., 2 N.J. 469 (Sup. Ct. 1949); Franko v. Mack Mfg. Corp., 5 N.J. Super. 1 (App. Div. 1949); Temple v. Storch Trucking Co., 2 N.J. Super. 146 (App. Div. 1949); affirmed, 3 N.J. 42 (Sup. Ct. 1949).
There was, in the instant case, such unusual strain or exertion within the intendment of the cited cases. The unloading of the freight cars was not the customary and usual work of the decedent. His daily work consisted of something entirely apart from the work he did while unloading the ingots. The work was of unusual character. It was work which was done at irregular intervals. From this work came an unusual strain which was not incident to his daily routine. This unusual exertion aggravated the then existent ailment of the employee to the extent of causing his death. The facts in this case demonstrate that the death is, therefore, the result of an accident.
The determination of the County Court is affirmed.